Filed 7/29/26  P. v. Zavala CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>ANGEL ZAVALA,<br><br>      Defendant and Appellant. | C102600<br><br>(Super. Ct. No. CRF23-00043) |

Defendant Angel Zavala told a police officer he was going to rape and kill her after she arrested him for public intoxication.  Following a bench trial, the trial court found him guilty of criminal threats, threatening a public officer, misdemeanor battery on a peace officer, and misdemeanor public intoxication.  The court imposed the upper term on the criminal threats conviction and sentenced Zavala to 11 years in prison.

On appeal, Zavala argues that there was insufficient evidence to support the criminal threats conviction, the trial court should not have imposed the upper term, and the threatening a public officer conviction must be reversed because it was necessarily included within the criminal threats conviction.  We conclude that sufficient evidence supports the criminal threats conviction, find no error in the trial court's sentencing decision, and determine that threatening a public officer under Penal Code section 71 is

1

not necessarily included within the offense of criminal threats under section 422.[1] We therefore affirm.

BACKGROUND

In April 2023, the People charged Zavala with one count of making a criminal threat against Marysville police officer A.R. (§ 422, subd. (a)), threatening a public officer (§ 71, subd. (a)), misdemeanor battery on a peace officer (§ 243, subd. (b)), and misdemeanor public intoxication (§ 647, subd. (f)). Zavala waived his right to a jury trial. After being advised of his rights, Zavala also admitted he had a prior strike conviction and a prior serious felony conviction. He also admitted aggravating factor allegations, including that: (1) the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness as to the criminal threats and threatening a public officer counts; (2) he had engaged in violent conduct that indicated a serious danger to society; (3) he had prior convictions that were numerous or of increasing seriousness; (4) he was on probation or parole at the time of the offenses as to the criminal threats and threatening a public officer counts; and (5) he performed unsatisfactorily on probation or parole.

In the bench trial that followed, A.R. testified that she responded to a call at a local bar one evening in December 2022. She found Zavala lying face down on the ground outside. A.R. was familiar with Zavala, as she had previously arrested him for public intoxication. On those occasions, Zavala was drunk and made belligerent statements toward the officers on the scene.

On this occasion, Zavala again appeared to be drunk and became argumentative. He stated that he recognized A.R. from previous interactions and said, " 'I remember you, you stupid bitch. I told you I was going to get you, and now I'm actually gonna.' " The

---

[1] Undesignated statutory references are to the Penal Code.

statement caught A.R. off guard and made her feel concerned, but she recognized that Zavala was intoxicated. He cursed and yelled at her.

After verifying Zavala's blood alcohol level, A.R. arrested him, and officers assisted him into A.R.'s patrol car. On the drive to the jail, Zavala became louder and angrier. The jail required Zavala to be medically cleared, so A.R. drove him to a local hospital.

During the drive, Zavala told A.R. that ever since their first contact, he had wanted to rape her and that he had been making plans to do so. These statements made A.R. uncomfortable because they went beyond "drunken banter." Zavala said that "he was going to rape [her] with razor blades – he was going to break into [her] home, [and] rape [her] with razor blades." He told her that he was going to scalp her with razor blades, "chok[e her] with his dick," and "stab [her] in the pussy with a knife while watching [her] choke on his dick." He said that " '[a]fter your pussy is bleeding from the razors, I'm going to shove my dick inside you and then I'm going to kill you.' "

When A.R. did not respond, Zavala said: " 'You don't believe me, bitch? I found your address on Google. I know you live in Auburn in a yellow house. I'm going to fuck you up.' " He knew the make and model of the car she drove when off duty. A.R. became fearful Zavala would carry out his threats and kill her because she did, in fact, live in a yellow house in Auburn. The specificity of Zavala's threats, even while he was drunk, also suggested that he had researched her after their first contact.

A.R. told Zavala to stop, saying he would face additional charges, but he cursed at her and continued his threats. "At that point he was saying things like 'Fuck you, you stupid bitch. I don't have to fucking listen to you. I'm going to fucking kill you.' "

When they arrived at the hospital, Zavala "spit a large glob of saliva, mucusy saliva" on A.R.'s cheek and said, " 'See, bitch, that's how I'm going to wake you up at your house in Auburn before I fuck you and kill you.' " A.R. was fearful and requested assistance. Zavala told A.R., " 'Best believe I'm coming after you. I know where you

3

live.  I know your address, bitch.  Your address is on the Internet.  This is the 21st [c]entury and your address is on the Internet, bitch.  I'm going to come after you.' "  He added, " 'I'm going to put a red beam on your forehead, bitch.' "  A.R. understood that to mean that he would get a gun and shoot her in the head.  He repeated this threat approximately 10 times and gestured with his hand five or six times making "finger gun motions" toward her.  Zavala did not make any threats to sexually assault the officer who arrived to assist, break into that officer's house, or say he knew where that officer lived.  A.R. expressed concern for her safety to the assisting officer, asking how Zavala could have found out where she lived.

A.R. also testified about an additional encounter she had with Zavala the following month, when she responded to a call made by one of his family members.  Zavala said that A.R. had lied in her report about the December 2022 incident and that he had never said he was going to kill her with a red dot.  To A.R., this showed that Zavala remembered who she was and had a clear recollection of what had happened, even if he was intoxicated.

A.R. additionally testified that she had moved after the December 2022 incident, but she remained afraid that Zavala would try to carry out his threats to rape and kill her if he learned the location of her current residence.  She responded affirmatively when asked if she had taken steps to protect her new residence.  She said that her decision to take those steps "was [a] result[] of this case and the threats made by this defendant."

Zavala testified as well.  He explained that he had a history of hearing voices and hallucinating.  On the evening in question, he took a Xanax and drank two shots of tequila, got into a fight, and somebody knocked him out.  He did not remember anything else from that night.  He denied meeting any police officers or making any threats.  He denied any prior contact with A.R.

In the sanity phase of the trial, Zavala's mother testified that he had mental health issues when he was growing up.  One psychologist testified that Zavala was not sane on

4

the night of the offense.  A different psychologist stated that Zavala's behavior could be explained by intoxication, and Zavala was thus sane when he committed the crimes.

The trial court found Zavala guilty of all charges.  The court also rejected Zavala's sanity defense, reasoning that he failed to prove he was incapable of understanding the nature and wrongfulness of his acts.

Before sentencing, Zavala submitted a sentencing brief asking the trial court to impose the middle term on the criminal threats conviction, based on several mitigating factors under California Rules of Court, rule 4.423:  he was suffering from a mental illness that reduced his culpability, he was under 26 years old at the time of the offense, multiple enhancements were alleged, and the enhancements were based on a prior conviction more than five years old.  At the sentencing hearing, defense counsel requested imposition of the middle term because Zavala was suffering from a mental or physical condition that reduced his culpability for the crime.

The trial court acknowledged the mitigating factors, saying, "So for Mr. Zavala, we've always taken the fact of knowing that he had some mental issues and the substance abuse issue, that everybody has tried to see if he could be rehabilitated at the local level." The court then recited his criminal history and prior unsuccessful efforts to rehabilitate: "There were – we have the original, you know, threats to his brother, 422, 2016.  He was placed on probation.  He violated probation three times.  Okay.  And then there was a 422 misdemeanor which – as far as misdemeanors go[], this was a 422, which was reduced.  Or it was a misdemeanor, and he had probation terminated unsuccessfully.  In 2018, he had a 487(c).  Again, put him on probation, 365 days, modifiable into a residential treatment program.  He failed to complete residential treatment.  Okay.  And then after that, following it up with drunk drivings and being drunk in public.  [¶]  He's 27 years old.  And when you look at the gravity of the offense of this case, this is sadistic.  I don't buy that he's sorry.  And maybe his family and friends have tried their best with him, but he clearly intended the threats towards the officer and they are so graphic and so

5

threatening. You know, he hunted her down and figured out where she lived. She had to move, this – he committed an upper-term case."

Addressing the aggravating factors, the trial court said, "His overall history – you know, we're looking at the misdemeanor too here. He did engage in violent conduct, that misdemeanor 422. His overall conduct previously indicates that he has engaged in violent conduct and he is a serious threat to society. And I'm not counting the strike and not this case when I reach that conclusion. His overall criminal history, he's facing the three strikes sentencing, which is deserving. It doubles the punishment. So because of that strike – I'm not going to strike it because he – he earned it. And if I were to strike his strike, then the sentence would be, again, lower than what he deserved. He's been getting lower than what he deserved all along because of an effort on my part, too, to want to rehabilitate Mr. Zavala. [¶] … [¶] So he was on probation, mandatory supervision or PRCS when – or parole when the crime was committed. Therefore, his performance on supervision has been unsatisfactory. That's looking at the numerous violations that he has on the 422, three violations of probation, violations on the misdemeanor too, on this matter, so I am going to follow the recommendation. I thought long and hard about this. But at some point in time, people cannot be rehabilitated and then they constitute a threat to society."

The trial court imposed an aggregate sentence of 11 years, consisting of six years for the criminal threats conviction (double the upper term), plus five years for the serious felony enhancement; six years for threatening a public officer (double the upper term), which was stayed under section 654; one year for misdemeanor battery, run concurrently; and six months for the misdemeanor public intoxication count, also run concurrently.

Zavala filed a timely notice of appeal.

6

I.

Zavala first contends that his criminal threats conviction is not supported by sufficient evidence.

The offense of making criminal threats under section 422 requires the prosecution to prove that: (1) the defendant willfully threatened to commit a crime resulting in death or great bodily injury to another person; (2) the threat was made with specific intent that it be taken as a threat, " ' "even if there is no intent of actually carrying it out" ' "; (3) the threat was, on its face and under the circumstances, " ' "so unequivocal, unconditional, immediate, and specific" ' " as to convey to the victim " ' "a gravity of purpose and an immediate prospect of execution of the threat" ' "; (4) the threat caused the victim " ' "to be in sustained fear" ' " for his or her safety; and (5) the fear was reasonable under the circumstances. (*In re George T.* (2004) 33 Cal.4th 620, 630.) Zavala challenges the sufficiency of the evidence as to the third and fourth elements. We disagree on both points.

As to the third element, " 'a communication need not be *absolutely* unequivocal, unconditional, immediate, and specific. The statute includes the qualifier "so" unequivocal, etc., which establishes that the test is whether, in light of the surrounding circumstances, the communication was *sufficiently* unequivocal, unconditional, immediate, and specific as to convey to the victim a gravity of purpose and immediate prospect of execution.' [Citation.] '[W]hether the words were sufficiently unequivocal, unconditional, immediate and specific they conveyed to the victim an … immediate prospect of execution of the threat can be based on all the surrounding circumstances and not just on the words alone.' " (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1433.) "A threat is not insufficient simply because it does 'not communicate a time or precise manner of execution[;] section 422 does not require those details to be expressed.' " (*People v. Butler* (2000) 85 Cal.App.4th 745, 752.) As to the fourth element, "sustained

7

fear" means "a period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) A victim's "knowledge of [the] defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear." (*Ibid.*)

" 'In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one. " 'The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " ' [Citation.] ' " 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.' " ' " (*People v. Alvarez* (2025) 18 Cal.5th 387, 470.)

In this case, we have little difficulty concluding there was sufficient evidence of both elements. As detailed above, testimony at trial showed that Zavala made extremely graphic and specific threats to rape and kill A.R., including detailed descriptions of how he would accomplish those acts. He repeated the threats multiple times. He told A.R. that he knew how to find her and provided details—including the location and color of her home and the make and model of her personal car—making clear he could make good on his threats. He concluded his series of threats by spitting on her, a battery. Contrary to Zavala's claim, moreover, the fact that he was in custody and could not immediately carry out his threats does not preclude his conviction for criminal threats. That is because "section 422 does not require an immediate ability or even an actual intention, to carry out the threat." (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 809; see also *People v. Wilson* (2010) 186 Cal.App.4th 789, 807 [" ' "immediate prospect of execution" in the context of a conditional threat is obviously

8

to be distinguished from those cases dealing with threats of immediate harm' " (italics omitted)]; *People v. Butler*, *supra*, 85 Cal.App.4th at p. 752 [threat need not " 'communicate a time or precise manner of execution' "].)

There was also ample evidence that A.R. was in sustained fear for her safety because of Zavala's threats.  A.R. testified that she was fearful at multiple points during the encounter, particularly once Zavala revealed that he had researched and identified the location of her home and type of car she drove.  She continued to be fearful when they were at the hospital, where Zavala spit on her and continued to issue threats, seeking assistance at that point from another law enforcement officer.  At trial, nearly two years later, even though she had moved from her house, she remained concerned that Zavala would try to carry out his threats and took steps to secure her new residence.

Zavala argues that the context for his statements—coming after repeated encounters with A.R. and other officers in which he was intoxicated and belligerent but never acted on any threat—shows that his words could not have placed A.R. in sustained fear.  A.R. explained, however, that Zavala's prior threats had been more general and directed toward all the officers on the scene.  When he first started threatening her directly in the December 2022 encounter, she was initially surprised because his comments seemed to go beyond his usual "drunken banter."  The threats then started to get worse and more graphic, to the point that she became fearful about what Zavala might do.  This testimony is more than sufficient for the trial court to have found that A.R. was in a state of sustained fear because of Zavala's threats.  Zavala observes that one of the expert witnesses in the sanity phase of the trial described his statements as merely " 'bizarre,' " " 'angry threat[s]' " that the expert " 'didn't make much of,' " but that certainly was not the only reasonable interpretation of the evidence.  (*People v. Alexander* (2010) 49 Cal.4th 846, 883 [trial court entitled to weigh evidence].)

Substantial evidence supports Zavala's conviction for criminal threats.

9

II.

Zavala next contends that the trial court should not have imposed an upper term sentence on the criminal threats conviction or the five-year serious felony enhancement. His arguments are either forfeited or without merit.

"As a general rule, only 'claims properly raised and preserved by the parties are reviewable on appeal.' " (*People v. Smith* (2001) 24 Cal.4th 849, 852.) Our Supreme Court adopted this forfeiture rule " 'to reduce the number of errors committed in the first instance' [citation], and 'the number of costly appeals brought on that basis' [citation]." (*Ibid.*) In the context of criminal sentencing, this forfeiture rule applies "to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*People v. Scott* (1994) 9 Cal.4th 331, 353.)

Zavala suggests that the trial court here made dual use of facts when it imposed the upper term sentence on the criminal threats conviction, but he did not make such an argument below, even after the court articulated the factors it was using to impose the sentence. He also did not ask the court to strike the serious felony enhancement in his sentencing brief or at the sentencing hearing. And his appellate briefs cite no authority and provide no reasoned argument in support of any challenge to the imposition of the five-year enhancement. These arguments are forfeited. (See *People v. Scott*, *supra*, 9 Cal.4th at p. 353; *People v. Coleman* (2024) 98 Cal.App.5th 709, 723-725.)

To the extent Zavala argues that the trial court otherwise abused its discretion when it imposed the upper term, we disagree. Section 1170, subdivision (b) provides that the trial "court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of

imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) We review discretionary sentencing decisions for abuse of discretion. (*People v. Knowles* (2024) 105 Cal.App.5th 757, 764.) In so doing, we presume that the trial court was aware of, and followed, applicable law (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114), that it "considered all of the relevant factors" (*People v. Myers* (1999) 69 Cal.App.4th 305, 310), and that it acted to achieve legitimate sentencing objectives (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377). " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court['s] … discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Ibid.*) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

Zavala stipulated to all of the aggravating factors alleged: that the crime involved a threat of great bodily harm; that he had engaged in violent conduct indicating a serious danger to society; that he had numerous prior convictions of increasing seriousness; that he was on probation or parole at the time of the offense; and that he had unsatisfactory performance on probation or parole. A single aggravating circumstance may justify imposition of an upper term sentence. (*People v. Lynch* (2024) 16 Cal.5th 730, 764.) Zavala maintains that his mental illness and substance abuse issues were mitigating factors that outweighed the factors in aggravation. The trial court expressly considered these factors, however, and reached the opposite conclusion. Whether reasonable minds could differ on that question, Zavala has not demonstrated that the trial court's weighing of the relevant considerations was arbitrary or irrational. (*People v. Carmony*, *supra*, 33 Cal.4th at pp. 376-377; *People v. Knowles*, *supra*, 105 Cal.App.5th at p. 770.)

11

## III.

Finally, Zavala argues that his conviction for threatening a public officer under section 71 must be reversed because the offense is a lesser and necessarily included offense of making criminal threats under section 422. We disagree.

"A defendant … cannot be convicted of both an offense and a lesser offense necessarily included within that offense, based upon his or her commission of the identical act." (*People v. Sanchez* (2001) 24 Cal.4th 983, 987.) "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117.) When considering whether a defendant may be convicted of multiple charged offenses, however, "a court should consider only the statutory elements," and not the accusatory pleading. (*People v. Reed* (2006) 38 Cal.4th 1224, 1229.) "The evidence actually introduced at trial is irrelevant to the determination of the status of an offense as lesser included." (*People v. Wright* (1996) 52 Cal.App.4th 203, 207.)

The elements of threatening a public officer under section 71 are: " ' "(1) A threat to inflict an unlawful injury upon any person or property; (2) direct communication of the threat to a public officer or employee; (3) the intent to influence the performance of the officer or employee's official duties; and (4) the apparent ability to carry out the threat." ' " (*In re Ernesto H.* (2004) 125 Cal.App.4th 298, 308.) As noted above, the elements of a criminal threat under section 422 are: (1) the defendant willfully threatened to commit a crime causing death or great bodily injury to the victim; (2) the threat was made with specific intent that it be taken as a threat, even absent intent to carry out the threat; (3) the threat was, on its face and under the circumstances, " ' "so unequivocal, unconditional, immediate, and specific" ' " as to convey to the victim " ' "a gravity of purpose and an immediate prospect of execution of the threat" ' "; (4) the threat caused

the victim to be in sustained fear for his or her safety; and (5) the fear was reasonable under the circumstances. (*In re George T.*, *supra*, 33 Cal.4th at p. 630.)

In *People v. Chaney* (2005) 131 Cal.App.4th 253, 256 (*Chaney*), the First District Court of Appeal considered whether threatening a public officer under section 71 was a lesser included offense of making a criminal threat under section 422. Applying the statutory elements test, the court concluded that it was not, reasoning that "a section 422 violation may be committed against *any person*, and does not require the specific intent to influence the performance of the public officer's duty, but rather only the intent that the statement be 'taken as a threat, even if there is no intent of actually carrying it out.' [Citation.] Therefore, a violation of section 422 can be committed without violating section 71, and section 71 is not a necessarily included lesser offense." (*Id.* at p. 257.)

In so concluding, the court also considered the accusatory pleading test and distinguished *In re Marcus T.* (2001) 89 Cal.App.4th 468, in which the Second District Court of Appeal found that the intent required by section 422, when the threat is directed at a public officer, necessarily "encompassed the intent alleged to violate section 71." (*Id.* at p. 473.) The *Chaney* court observed that a threat could be made to a victim, who happened to be a public officer, for any number of personal reasons unrelated to the performance of his or her duties. (*Chaney*, *supra*, 131 Cal.App.4th at p. 258.) "During a bitter divorce, for example, a person could threaten a spouse, who also happens to be a police officer, with serious bodily injury in retribution for, or conditionally upon relinquishing, a claim to sole custody of the children." (*Ibid.*)

We agree with the analysis in *Chaney* that the identity of the victim and specific intent required by section 71 distinguish the crime from section 422. As such, it is possible to make a criminal threat under section 422 without necessarily threatening a public officer under section 71, and the latter is therefore not necessarily included in the former.

13

Zavala agrees with this conclusion but asserts that the allegations in the accusatory pleading and the facts at trial establish that his section 71 conviction was necessarily included in his conviction under section 422.  But as we have explained, when considering whether multiple convictions for *charged* crimes are proper, only the statutory elements are considered.  (*People v. Reed*, *supra*, 38 Cal.4th at p. 1231 ["Courts should consider the statutory elements and accusatory pleading in deciding whether a defendant received notice, and therefore may be convicted, of an *uncharged* crime, but only the statutory elements in deciding whether a defendant may be convicted of multiple *charged* crimes"].)  Because Zavala was charged with both crimes, only the elements test is relevant.  And when applying the elements test, "we look strictly to the statutory elements, not to the specific facts of a given case."  (*People v. Ramirez* (2009) 45 Cal.4th 980, 985.)  Zavala could thus be convicted of both crimes.

DISPOSITION

The judgment is affirmed.

/s/
FEINBERG, J.

We concur:

/s/
ROBIE, Acting P. J.

/s/
BOULWARE EURIE, J.

14